UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD T. FITZWATER and KELLE FITZWATER, <br><br>　　　　　　Plaintiffs, <br>　vs. <br><br>BAC HOME LOANS SERVICING, LP, et al., <br><br>　　　　　　Defendants. | Case No.: 2:09-cv-02400-GMN-GWF <br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Edward and Kelle Fitzwater bring the instant suit against Defendants Bank of America, N.A. ("BOA"), BAC Home Loans Servicing, LP ("BAC Home Loans"), and ReconTrust Company, N.A. ("ReconTrust") (collectively, "Defendants") relating to the foreclosure of their home and the subsequent trustee sale. Pending before the Court is Defendants' Motion to Dismiss (Mot. Dismiss, ECF No. 36) and Errata (ECF No. 38) attaching Exhibit A. Plaintiffs filed a Response (ECF No. 47), and Defendants filed a Reply (ECF No. 50).

## PROCEDURAL HISTORY

The Fitzwaters originally filed suit in state court, and Defendants removed to this Court. (ECF No. 1.) The case was transferred to the United States Judicial Panel on Multidistrict Litigation in February 2010, and remanded back to this Court in May 2010. (MDL Order for Transfer, ECF No. 7; MDL Order Remanding Case, ECF No. 11.)

Plaintiffs filed an Amended Complaint against Defendants BOA, BAC Home Loans, and ReconTrust in October, 2011. (Am. Compl., ECF No. 35.) Defendants filed the instant motion and Errata in November, 2011. (Mot. Dismiss, ECF No. 36; Errata, ECF No. 38.)

Plaintiffs' Amended Complaint alleges four causes of action: (1) Illegal Sale under Nev. Rev. Stat. § 107.082, (2) Breach of Contract, (3) Breach of Implied Covenant of Good Faith and Fair Dealing, and (4) Unjust Enrichment. (Am. Compl., ECF No. 35.)

## BACKGROUND

In August 2007, the Fitzwaters purchased the property located at 10947 Carberry Hill Street, Las Vegas, Nevada 89141, APN #: 177-31-712-053. (First Deed of Trust, Ex. B to Am. Compl., ECF No. 35-1.) To finance this purchase, Plaintiffs procured a loan in the amount of $316,000.00 ("Note") from Countrywide Bank FSB ("Countrywide") and executed a corresponding First Deed of Trust. (*Id.*; Am. Compl. 3:5-9, ECF No. 35.) At around the same time, Plaintiffs also executed a second mortgage in the amount of $59,250.00 and corresponding Deed of Trust with Countrywide. (Second Deed of Trust, Ex. C attached to Mot. Dismiss, ECF No. 36-2; Mot. Dismiss at 2:15-17.) Both deeds of trust name Countrywide as the lender, ReconTrust as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary solely as nominee for Lender and Lender's successors and assigns. (First Deed of Trust, Ex. B. 4 attached to Mot. Dismiss, ECF No. 36-1; Second Deed of Trust, Ex. C. 3 attached to Mot. Dismiss, ECF No. 36-2.)

BOA purchased Countrywide and its affiliates in July 2008. (Am. Compl. at 3:20-21.) Thereafter, the deeds of trust covering Plaintiffs' property were assigned to BOA, and servicing of Plaintiffs' loan was transferred to BAC Home Loans. (*Id.* at 3:22-26; 13:24-25.)

Plaintiffs made payments on the loans until December 2008, at which time they defaulted. (*Id.* at 4:3) From October 2008 until June 2009, Plaintiffs continually attempted to reach a loan modification agreement with Defendants. (*Id.* at 3:24-25; 7:1-3.) ReconTrust

recorded a Notice of Default and Election to Sell ("Notice of Default") on March 25, 2009. (*Id.* at 4:20-21; Notice of Default, Ex. B attached to Am. Compl.)

In June 2009, Plaintiffs received from BAC Home Loans an offer in the form of a trial period payment plan ("Trial Agreement"), which allegedly stipulated that BAC Home Loans would grant them a loan modification if they were to provide a signature, certain documents, and trial period payments. (*Id.* at 9:1-3.) The Fitzwaters allege that on or about August 31, 2009, they were told by Defendant BAC Home Loans that "all documents needed for a loan modification had been received." (*Id.* at 11:7-9.). However, on October 26, 2009, the Fitzwaters were told by a representative of BAC Home Loans' Hope Team that a signed copy of their 2008 Tax Return was needed before the loan modification would be forthcoming. (*Id.* at 12:1-3.) The Fitzwaters received a proposed loan modification ("Draft Agreement") on November 23, 2009. (*Id.* at 13:11-12; Ex. E to Am. Compl., ECF No. 35-1.) The Draft Agreement added $29,928.48 to Plaintiffs' unpaid principal balance on the loan and required an increased monthly payment and notarized signatures from both BOA and Plaintiffs. (*Id.* at 13:12-17; Ex. E to Am. Compl.) Plaintiffs were formally denied a loan modification in May 2010. (Am. Compl. at 13:18.)

## **DISCUSSION**

### A.     **Legal Standard**

A court must dismiss a complaint that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A claim is sufficient if it puts the defendant on "fair notice of what the . . . claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957). In addition, a complaint is valid only if it consists of more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In deciding whether a claim is sufficient, a court must disregard allegations that are "merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The remaining factual allegations are assumed true and construed in the light most favorable to plaintiffs. *Id.*

A court must dismiss a complaint only if its factual allegations do not "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. A claim is facially plausible when it contains allegations of material fact that would allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). If it contains allegations that are "merely consistent with" a defendant's liability, the complaint falls short of the plausibility standard. *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If a 12(b)(6) motion prevails, a district court should freely grant a plaintiff leave to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). In general, leave to amend should be given with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). When granting a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.     Illegal Sale under Nev. Rev. Stat. § 107.082**

The Fitzwaters claim that Defendants did not properly follow statutorily-prescribed procedures when they foreclosed on the Fitzwaters' home. (Am. Compl. at 14-16.) Specifically, the Fitzwaters claim that Defendants violated Nev. Rev. Stat. § 107.082(2) by failing to file a notice of default and election to sell after orally postponing the foreclosure sale date three times. (*Id.*)

The statute states, "[i]f such a sale has been postponed by oral proclamation three times, any new sale information must be provided by notice as provided in Nev. Rev. Stat. 107.080." Nev. Rev. Stat. § 107.082(2). There are two types of notice required by Nev. Rev. Stat. § 107.080 before a trustee can complete a foreclosure sale: 1) notice of default and election to sell, and 2) notice of trustee's sale. A notice of default and election to sell must include certain information. *See* Nev. Rev. Stat. § 107.080(2)(c)(1-6)[1]. In particular, the notice of default

---

[1] A notice of default and election to sell must state:

> (1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;
> (2) The full name and last known business address of every prior known beneficiary of the deed of trust;

must "[d]escribe the deficiency in performance or payment" and, if the property in question is residential, must comply with the provisions of Nev. Rev. Stat. § 107.087. Nev. Rev. Stat. § 107.080(3). On the other hand, a notice of trustee's sale must include only "notice of the time and place [of the sale]" and must comply with the provisions of Nev. Rev. Stat. § 107.087. Nev. Rev. Stat. § 107.080(4).

Here, ReconTrust recorded a Notice of Trustee's Sale in June 2009. (Am. Compl. at 9:6-8; Ex. C to Am. Compl., ECF No. 35-1.) In July, BAC Home Loans orally postponed the foreclosure sale for the first time. (*Id.* at 10:6-11.) BAC Home Loans orally postponed the foreclosure sale for the second time in September 2009. (*Id.* at 11:16-20.) ReconTrust recorded a second Notice of Trustee's Sale the following month. (*Id.* at 12:4-6; Ex. D to Am. Compl., ECF No. 35-1.) In November 2009, BAC Home Loans orally postponed the foreclosure sale date for the third time. (*Id.* at 13:3-6.) After the Fitzwaters were formally denied a permanent loan modification, ReconTrust recorded a third Notice of Trustee's Sale in May 2011, setting the foreclosure sale date for June 14, 2011, which was later postponed. (Notice of Trustee's Sale, Ex. H attached to Mot. Dismiss, ECF No. 36; Am. Compl. at 13:19-22.)

The Fitzwaters' claim of wrongful foreclosure rests upon two assumptions about Nev. Rev. Stat. § 107.082. First, the Fitzwaters assume that "any new sale information" includes

---

> (3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the note secured by the deed of trust;
> (4) That the trustee has the authority to exercise the power of sale with respect to the property pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the deed of trust;
> (5) The amount in default, the principal amount of the obligation or debt secured by the deed of trust, a good faith estimate of all fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale; and
> (6) The date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.

Nev. Rev. Stat. § 107.080(2)(c)(1-6).

information about their updated deficiency amount, since they made payments to Defendants in excess of $5,881.00 after the Notice of Default was filed. (Am. Compl. at 16:21-24.) Second, the Fitzwaters assume that Defendants were obligated to "satisfy all parts of Section 107.080 in order to foreclose following three (3) oral sale postponements." (Resp. at 8:21-22.) The Fitzwaters argue that, had it intended Nev. Rev. Stat. § 107.082 to require only a Notice of Trustee's Sale, the Legislature would have explicitly stated as much. (Am. Compl. at 8:19-21.)

On the other hand, Defendants contend that the plain language of "any new sale information" means only information regarding the "time and place of the sale." (Mot. Dismiss at 7:9-10); *see also* Nev. Rev. Stat. § 107.080(4) ("The trustee . . . shall, . . . before the making of the sale, give notice of the time and place thereof. . . ."). Defendants maintain that since "any new sale information" includes only the time and place of the foreclosure sale, they complied with Nev. Rev. Stat. § 107.082 by filing a new Notice of Trustee's Sale in May 2011. (Reply at 7:13-16; *see* Notice of Trustee's Sale, Ex. H attached to Mot. Dismiss, ECF No. 36.)

The parties do not cite to any case in Nevada that has decided which type of notice is required to satisfy Nev. Rev. Stat. § 107.082(2). A review of Nevada case law reveals that this is an issue of first impression. When interpreting a statute, a district court must "give its terms their plain meaning." *S. Nevada Homebuilders Ass'n v. Clark County*, 117 P.3d 171, 175 (Nev. 2005). A district court must interpret the provisions of a statute "harmoniously with one another in accordance with the general purpose of those statutes and should not [] read [the statute] to produce unreasonable or absurd results." *Washington v. State*, 30 P.3d 1134, 1136 (Nev. 2001).

The plain meaning of the term "sale information" as found in Nev. Rev. Stat. § 107.082(2) appears to apply only to information regarding the actual sale of the property. The provisions regulating the notice of default and election to sell, by its name and terms, concern

information regarding the parties involved in the foreclosure, the type of instrument recording the transfer of interests, and the deficiency of payment. *See* Nev. Rev. Stat. § 107.080(2)(c)(1-6). On the other hand, the provisions regulating the notice of trustee's sale require notice of the time and place of sale, which is information applicable to the actual sale. *See* Nev. Rev. Stat. § 107.080(4). The Court finds that it is more reasonable to read Nev. Rev. Stat. § 107.082(2) to require only a notice of trustee's sale because the statute applies only if the actual sale was postponed three times. Because a notice of trustee's sale includes only information about the actual sale of the property, the Court concludes that Nev. Rev. Stat. § 107.082(2) requires filing only a new Notice of Trustee's Sale and not a Notice of Default and Election To Sell.

The Court finds that Defendants filed a Notice of Trustee's Sale on May 24, 2011, in compliance with Nev. Rev. Stat. § 107.082. Therefore, Plaintiffs' claim for illegal sale under Nev. Rev. Stat. § 107.080 is dismissed with prejudice.

**C.     Breach of Contract**

A breach of contract occurs when (1) there is an enforceable contract; (2) the plaintiff performed or was excused from performing; (3) the defendant failed to perform; and (4) the plaintiff was damaged as a result of the defendant's failure to perform. *Birkland v. Countrywide Home Loans, Inc.*, No. 2:11-CV-00502-GMN, 2012 WL 83773, at *4 (D. Nev. Jan. 11, 2012). In Nevada, a contract is enforceable if there is an offer, acceptance, meeting of the minds, and consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

**1.     Enforceable contract**

Here, there appears to be two separate agreements at issue – 1) the Trial Agreement and 2) the Draft Agreement (Ex. E attached to Am. Compl.).

The Fitzwaters claim a representative of BAC Home Loans offered to consider them for a loan modification if they agreed to make three trial period payments. (Am. Compl. at 8:17-

24.) In June 2009, Plaintiffs received from BAC Home Loans an offer in the form of a trial period payment plan ("Trial Agreement"), which allegedly stipulated that BAC Home Loans would grant them a loan modification if they were to provide a signature, certain documents, and trial period payments. (*Id.* at 9:1-3.)  The Fitzwaters allege that they accepted the Trial Agreement by signing it. (Am. Compl. at 17:7.)  The Fitzwaters appear to allege that a meeting of the minds occurred when the Fitzwaters agreed with a representative of BAC Home Loans to participate in a trial payment plan. (*Id.* at 8:21-24.)

      The Fitzwaters do not specifically allege that the Trial Agreement was accompanied by consideration.  However, the Fitzwaters allege that the representative of BAC Home Loans who offered to consider them for a loan modification requested trial payments even though the BAC Home Loans' computer system did not recommend any assistance for them. (*Id.*)  Therefore, the Fitzwaters appear to allege that the Fitzwaters' signature and trial payments were consideration for the proposed loan modification.  In addition, the Fitzwaters allege that they sought a loan modification since December 2008, (*Id.* at 3:24-25; 7:1-3.), which the Court finds is sufficient to show that the proposed loan modification offered by BAC Home Loans was consideration for their signature and trial payments.  Thus, the Court finds that the Fitzwaters have adequately alleged the existence of consideration and of a valid contract in regards to the Trial Agreement.

      Defendants argue that there is no contractual relationship between the parties because the basis of the Fitzwaters' claim is not the Trial Agreement but the Draft Agreement for loan modification. (Ex. E attached to Am. Compl.)  Defendants claim that Plaintiffs cannot claim breach of contract because Plaintiffs did not accept the terms of the Draft Agreement, which required an increased monthly payment and additional signed documents. (Mot. Dismiss at 4:23-27.)  However, it is the Trial Agreement and not the Draft Agreement that the Fitzwaters allege has been breached.  Therefore, the Court does not find Defendants' argument persuasive.

### 2. Performance

The Fitzwaters allege that the Trial Agreement required acceptance by signature. (Am. Compl. at 16:7.) The Fitzwaters allege that they signed the Trial Agreement, made payments, and submitted the requisite paperwork to BAC Home Loans. (*Id.* at 16:10-11.) Thus, the Court finds that the Fitzwaters adequately alleged that they performed on the Trial Agreement. The Fitzwaters then claim Defendants BOA and BAC Home Loans breached by "failing to provide the loan modification set forth in the [Trial] Agreement." (*Id.* at 17:11-12.) This language suggests one of two things: (1) that no loan modification offer was ever provided; or (2) the loan modification offer that was provided did not comply with the terms of the Trial Agreement. Since the Fitzwaters admit that Defendants offered them a loan modification in the form of the Draft Agreement, (*Id.* at 13:11), the Fitzwaters must be alleging that the loan modification did not comply with the terms of the Trial Agreement. Although the proposed modification increased their monthly payment, the Fitzwaters do not allege that the parties agreed as part of the Trial Agreement that the loan modification would decrease the current monthly payment or in other ways be more favorable to Plaintiffs. Therefore, it is unclear how the loan modification did not comply with the terms of the Trial Agreement.

As a final matter, the Court finds that the Fitzwaters have adequately alleged damages. (*See* Am. Compl. at 17:15-18.) However, since the Fitzwaters have failed to adequately allege Defendants' failure to perform, they have failed to state a claim for breach of contract. Accordingly, the Fitzwaters' breach of contract claim is dismissed with leave to amend to clarify how Defendants might have failed to perform on the Trial Agreement, perhaps by attaching a copy of the language in the Trial Agreement requiring Defendants to offer a more favorable loan modification.

/ / /

/ / /

**D.    Breach of Implied Covenant of Good Faith and Fair Dealing**

In Nevada, a covenant of good faith and fair dealing is implied into every contract. *A.C. Shaw Const., Inc. v. Washoe County*, 914, 784 P.2d 9, 10 (Nev. 1989). To establish a claim for breach of implied covenant of good faith and fair dealing, a plaintiff must show (1) that the plaintiff and the defendant were parties to a contract; (2) that the defendant breached the covenant of good faith and fair dealing by "deliberately counterven[ing] the intention and spirit of the contract"; and (3) that the plaintiff's "justified expectations" were denied. *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991). Whether the defendant's conduct denied the plaintiff its justified expectations "is determined by the various factors and special circumstances that shape these expectations." *Id.* at 924.

**1.    Parties to a Contract**

Taking the Fitzwaters' allegations as true, they have adequately pled the existence of a contract in the form of the Trial Agreement. (Am. Compl. at 9:1-5.) In addition, the Fitzwaters complied with the terms of the Trial Agreement by providing all trial payments and documents. (*Id.* at 11:10-13.) Thus, the Fitzwaters and Defendants are parties to a contract.

**2.    Breach of Implied Covenant**

The Fitzwaters claim that Defendants BOA and BAC Home Loans breached the implied covenant of good faith and fair dealing by (1) offering a loan modification only after delay, misdirection, and misinformation; (2) offering a loan modification requiring higher monthly payments; and (3) inducing their default on the loan by promising a loan modification. (Am. Compl. at 18:5-18; Resp. at 6:22-28.)

**3.    Delay, Misdirection, and Misinformation**

The Fitzwaters allege that Defendants subjected them to delay, misdirection, and misinformation in performing on the Trial Agreement. (Am. Compl. at 18:8-9.) BAC Home Loans finally acknowledged that the Fitzwaters had completed all steps required by the Trial

Agreement on August 31, 2009. (*Id.* at 11:7-9.)  Thus, less than three months elapsed from the time the Fitzwaters accepted the Trial Agreement by complying with its terms until the time Defendant BAC Home Loans sent the Draft Agreement on November 23, 2009. (*Id.* at 13:11-17.)  During this period, representatives of BAC Home Loans requested the Fitzwaters' 2008 Tax Return on only one additional occasion. (*Id.* 12:1-3.)  Although a representative of Defendant BOA allegedly told Plaintiffs that it typically takes 45 days after all trial payments are recorded to receive a loan modification, (*Id.* 11:21-24), it was reasonable in 2009 to anticipate a greater delay given the amount of requests for loan modifications Defendant BAC Home Loans must have processed.  A little short of three months' time is not a "delay" that plausibly suggests Defendant BAC Home Loans "deliberately contravene[d]" the spirit of the Trial Agreement.  Likewise, it is unclear how Defendant BAC Home Loans benefited from a relatively minor delay in light of the facts that it offered a loan modification and did not attempt to foreclose until after the Fitzwaters failed to accept the Draft Agreement. (*Id.* at 13:11-18.)

### 4.  **Higher Monthly Payments**

The Fitzwaters allege that the increase in overall principle and mortgage payments required by the Draft Agreement contravened the spirit and intention of the Trial Agreement. (*Id.* at 13:16-18.)  However, as explained above, the Fitzwaters allege no facts that lead to the conclusion that there was an understanding that their mortgage payments or overall mortgage would decrease.

### 5.  **Inducing Default**

The Fitzwaters also claim that Defendants breached the implied covenant of good faith and fair dealing in regards to the Note by inducing the Fitzwaters' default through oral representations that a loan modification would be forthcoming. (Resp. at 6:23-25.)  In particular, the Fitzwaters claim they "were informed" that they would have to be in default

before they could obtain a loan modification. (Am. Compl. at 4:1-2.) These allegations are similar to those in *Gamboa v. World Sav. Bank, FSB*, 3:10-CV-454-ECR-VPC, 2010 WL 5071166 (D. Nev. Dec. 6, 2010). In *Gamboa*, the plaintiffs claimed their lenders breached the implied covenant of good faith and fair dealing by not offering a loan modification after allegedly informing them that one would be forthcoming only if the plaintiffs defaulted. *Gamboa*, 2010 WL 5071166, at *3. The court held that the "information allegedly provided to Plaintiffs telephonically by Defendants . . . does not support a claim for breach of the implied covenant of good faith and fair dealing." *Id.* at *3. The court reasoned that the allegation that plaintiffs were told to default does not establish that defendants performed the contract in a manner inconsistent with the intention or spirit of the contract. *Id.* Thus, even if a representative of Defendant BAC Home Loans advised the Fitzwaters to default, this alone is insufficient to state a claim for breach of the implied covenant of good faith and fair dealing.

### 6. Justified Expectations

The Fitzwaters allege that they suffered both loss of property and loss of consideration under the Trial Agreement due to Defendants' breach of the implied covenant of good faith and fair dealing. (Am. Compl. at 18:19-20.) In addition, they allege that the increased monthly payments required under the Draft Agreement denied their justified expectations. (*Id.* at 18:13-16.)

It appears the Fitzwaters were able to live in their house payment-free after Defendants acknowledged receipt of the third trial payment and all other required documentation in August of 2009 until Defendant BAC Home Loans sent the Draft Agreement; thus, it is unclear how the delay and misinformation caused "[l]oss of consideration provided under the [Trial] Agreement," as they allege. (*Id.* at 17:18.) Similarly, the Fitzwaters fail to allege any facts that would justify the expectation that they would receive a loan modification with lower

monthly payments.  Thus, any expectation that the Fitzwaters would receive a more favorable loan modification was not justified.

All of the Fitzwaters' allegations fail to state a claim for relief for breach of the implied covenant of good faith and fair dealing. The Fitzwaters will have leave to amend to include additional facts that may specify how the Draft Agreement plausibly contravened the intention and spirit of the Trial Agreement.

**E.     Unjust Enrichment**

The Fitzwaters claim that if the existence of a contract for loan modification is unsupported by the facts, then Defendants are liable for unjust enrichment for retaining the Fitzwaters' payments in excess of $5,881. (Am. Compl. at 19:9-11.)

Under Nevada law, an action for unjust enrichment lies when a person retains a benefit that in good conscience belongs to another. *Goodwin v. Executive Tr. Services, LLC*, 680 F. Supp. 2d 1244, 1255 (D. Nev. 2010).  However, "[a]n action 'based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.'" *Id.* (quoting *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)).  For this reason, "courts of this District have routinely held that a homeowner cannot bring a claim for unjust enrichment where a deed of trust and mortgage note already governs the relationship of the parties." *Peshek v. Litton Loan Servicing*, 2:10-CV-00812-GMN, 2011 WL 4479700, at *11 (D. Nev. Sept. 26, 2011).  Consequently, payments made pursuant to a trial loan agreement cannot be the subject of a claim for unjust enrichment because they were already due under the original loan agreement. *See, e.g.*, *Davila v. BAC Home Loans Servicing, LP*, 2:10-CV-02252-ECR, 2011 WL 3159146, at *3 (D. Nev. July 26, 2011) ("All [trial] monies paid over to BAC, whether pursuant to the written contract or the purported loan modification, were already due under the original loan agreement").

As alleged, the Trial Agreement constituted an express contract between the Fitzwaters and Defendants. (Am. Compl. at 9:1-5.) Because their payments totaling in excess of $5,881 were made pursuant to the terms of the Trial Agreement, the Fitzwaters' claim for unjust enrichment necessarily fails. Even if this Court did not find the Trial Agreement to be an enforceable contract, the payments in excess of $5,881 were already due under the original loan agreement, which constituted a binding contract when the Fitzwaters executed with Countrywide the Note and corresponding deed of trust. (Am. Compl. at 3:5-21.) Defendants are not liable for unjust enrichment by retaining those payments. Thus, the Fitzwaters' claim for unjust enrichment fails and is dismissed with prejudice.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 36) is **GRANTED**. Plaintiffs' first and fourth claims are **DISMISSED with prejudice**.

Plaintiffs are granted leave to amend their Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing causes of action, as well as any plausible alternative claims for relief. Plaintiffs shall have fourteen (14) days from the date of this Order to file an amended complaint. Failure to do so will result in dismissal of the case with prejudice.

DATED this __11__ day of _____July_____, 2012.

_____
Gloria M. Navarro
United States District Judge